# IN THE COURT OF APPEALS OF IOWA

No. 16-0497
Filed September 28, 2016

IN RE THE MARRIAGE OF WILLIAM J. NELSON
AND CRYSTAL C. NELSON

Upon the Petition of
**WILLIAM J. NELSON,**
    Petitioner-Appellant,

And Concerning
**CRYSTAL C. NELSON,**
    Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Floyd County, Christopher C. Foy,

Judge.


        William Nelson appeals the district court's denial of his petition to modify

physical care of his children with their mother, Crystal Nelson. **AFFIRMED.**


        Laurie J. Pederson of Pederson Law Office, Rockford, for appellant.

        David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles

City, for appellee.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

**I. Background Facts and Proceedings**

William Nelson and Crystal Nelson divorced in 2003 and have two children, A.N., fifteen years old, and S.N., eleven years old. The 2003 custody decree was modified in 2009. William sought to modify the 2009 order with the instant litigation. Under this order, William and Crystal had joint physical care of both children and alternated parenting time every two weeks.

William filed his application for modification in October 2014, alleging the conditions in Crystal's home and parenting abilities had deteriorated to the point that he should be awarded physical care of both children. Both parties reside in Charles City, Iowa, where Crystal lives with her boyfriend, Jesse, and William lives with his wife, Christina.

The court found, and the parties do not dispute, William's home is suitable for the children and is in good condition. William works locally and has described his employer as having a family-friendly environment where management is flexible with its employees when family issues arise.

Crystal's works locally as well and also is self-employed with a business she runs from her home.

Both children have been described as healthy and active, and both participate in various extracurricular activities. William contends, and the district court found, he is more supportive of the children's extracurricular activities than Crystal is and he contributes more effort in ensuring the children are prepared for their activities.

The district court found both children were doing well but also noted that A.N. had been diagnosed with depression, and she is being treated with medication and counseling. It also noted that A.N. has on several occasions run away from Crystal's house during Crystal's parenting time. On most of these occasions, if not all, A.N. ran away to William's house.

The current tension between the parties appears to have begun in October 2014 when William made a police report alleging child abuse occurring in Crystal's home. The report included allegations that both children were present in the home while domestic violence was occurring, that Crystal was mentally and emotionally abusing both children, and that Crystal had physically abused A.N. It is alleged this is when A.N. began running away from Crystal's home. Many of these of incidents allegedly involved Crystal and Jesse drinking alcohol.

The record also indicates Jesse has been convicted twice of operating while intoxicated and had his driver's license suspended. According to William, Crystal would have Jesse drive both children around without a valid driver's license.

Additionally, Jesse has been convicted of domestic violence. William alleges an incident where Crystal reported to him Jesse had assaulted her. Police officers responded to the incident, and Jesse was arrested. The record indicates the charges were eventually dismissed, ostensibly at Crystal's urging.

At trial, both William and Crystal testified Crystal attended a wedding with the children. William testified his children told him Crystal drank alcohol at the wedding and proceeded to drive them back to a hotel while she was intoxicated.

Crystal did admit to drinking alcohol at the wedding, but she denied being intoxicated while she drove the children.

William alleges Crystal verbally abuses both children by calling them names such as "bitch" or "slut." In support of this allegation, at trial William called A.N.'s ex-boyfriend as a witness, and he testified he personally witnessed Crystal call both children "fucking bitch" and "whore" every time he would visit Crystal's house. In an Iowa Department of Human Services (DHS) child protective services abuse assessment summary, Crystal admitted to calling A.N. a "bitch" in anger, but she denied ever doing so when she testified at trial.

There are also allegations Crystal has become physically abusive with the children. In August 2015, police officers responded to a child-abuse call at Crystal's home. DHS investigated the incident and confirmed Crystal had pushed A.N. into a kitchen counter resulting in a bruise to A.N.'s hip. The DHS report confirmed child abuse had occurred but also found the incident to be minor, isolated, and unlikely to reoccur. DHS decided not to place the report on the central abuse registry. A.N.'s ex-boyfriend also testified at trial as having witnessed Crystal get "physical" with the children.

At trial, William wanted to call both children to testify; however, the district court ruled that because of the other evidence it had already received, the "Court [did not] believe this would be particularly helpful to meet with the children." The Court recognized both children would probably indicate a preference to live with William but stated it was uncomfortable with the children being asked to state a preference as to one parent or the other.

In the final order, the court found William had made many allegations against Crystal but had presented very little credible evidence to support the allegations. The court noted the bulk of William's evidence was his hearsay testimony based upon information his children allegedly told him. The court further found there was no evidence to support the contention Crystal and Jesse had consumed alcohol in the presence of the children within the past year. It also found no evidence Jesse had driven the children around without a valid driver's license or that the condition of Crystal's home was unsafe or unsuitable for the children. The court also noted DHS's involvement and stated if Crystal's home was as unsafe as William alleged it to be, DHS would have taken formal action, which it did not do.

Ultimately, the court found William had not met his burden. The court held the only change in circumstances William had proven was the relationship between Crystal and A.N. had deteriorated, which the court found to be foreseeable as parent-child relationships tend to become strained as children enter their teenage years. Moreover, the court noted that Crystal does use profane language towards the children when she is angry, which was not acceptable, but stated it was "not a sound reason for changing physical care."

As to the children's presupposed preferences, the court reiterated that it had no doubt that A.N. probably did prefer to live with her dad but cautioned "the preferences of a teenager are not sufficient grounds for the court to modify a shared physical care arrangement, particularly when the present preferences of A.N. appear to be as much a reaction against the rules and expectations that Crystal has as anything else."

Additionally, the court found William presented very little credible evidence to exhibit his superior parenting skills as compared to Crystal. The court found both William and Crystal have strengths and weaknesses and neither party was clearly superior to the other.

The court denied William's request for modification, and he appeals.

**II. Standard of Review**

Actions for modification of physical-care orders lie in equity, and we review de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). We review the entire record "and decide anew the legal and factual issues properly presented and preserved for our review." *In re Marriage of Wade*, 780 N.W.2d 563, 565-66 (Iowa Ct. App. 2010). While we are not bound by the district court's findings, we afford them some weight and will only disturb the ruling if it has failed to do equity. *See In re Marriage of Mihm*, 842 N.W.2d 378, 381 (Iowa 2014).

**III. Discussion**

William argues it is not in the best interest of both children to continue the current two-week alternating, interval custody arrangement. Specifically he argues the verbal abuse of both children by Crystal will detrimentally affect their emotional well-being; the physical abuse of the children by Crystal will have detrimental effects on their sense of self-worth; and the alcoholic environment they are being exposed to will have lasting effects. He contends the court should have modified the physical care order and awarded him physical care of both children. He also maintains Crystal should be granted supervised visits until she can be more effective as a parent.

### A. Modification of Physical Care

The district court did not find a material and substantial change to warrant the modification of the existing physical care order. When a party seeks to modify an existing custody order, that party "must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interest make it expedient to make the requested change." *In re Marriage of Winnike*, 497 N.W.2d 170, 173 (Iowa Ct. App. 1992) (citing *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). The change in circumstances supporting the modification must not have been contemplated at the time of the existing order; the change must be more or less permanent— not temporary—and must relate to the child's well-being. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998).

Where parents have exercised joint physical care of the children, both have been found to be suitable physical-care parents. *See Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002). If the joint physical care order must be modified, "[t]he parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver." *Walton*, 577 N.W.2d at 871.

Although we give the children's preference of which parent they wish to live with some weight in a modification proceeding, it is given less weight than in the original custody determination. *See In re Marriage of Mayfield*, 577 N.W.2d 872, 873 (Iowa Ct. App. 1998).

In its order, the district court found no change in circumstances from the last order. Specifically, it held:

> The only change in circumstances William has shown is that the relationship between Crystal and A.N. has deteriorated. This can hardly be considered as unforeseen. It is not uncommon for the parent-child relationship to grow strained and come under stress as a child moves through her teenage years. The fact that Crystal occasionally uses profanity and calls her daughters names when she is angry, while unacceptable, is not a sound reason for changing physical care.

We agree with the district court that William has not established that a substantial change in circumstances has occurred since the entry of the last order that would support a change of physical care. William makes various allegations including that Crystal and Jesse continue to consume alcohol in the presence of the children, that Jesse has driven the children without a valid driver's license, and that Crystal's home is unsafe and unsuitable for the children. William has not provided sufficient evidence to support these allegations.

William testified the children would prefer to live with him, but that alone is not a substantial change in circumstances that would necessitate a modification. *See In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000) (discussing a child's preference as to child custody is a factor considered by the court but is not controlling). He further testified DHS's involvement with the children provided an adequate basis for modification. The children's well-being does not appear to be adversely affected under the current physical care order, as the record indicates both children are thriving and healthy. Additionally, we agree with the district court that although DHS was involved with this family, the

involvement was limited and would have been more extensive if the situation had warranted it.

Furthermore, even if we had found a material and substantial change, we are not convinced that William presented sufficient evidence to show he is the parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives. *See Walton*, 577 N.W.2d at 871.

We affirm the district court's denial of William's request for physical care.

### B.    William's Equal Protection Claim

William asserts he was denied equal judicial treatment in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Because we find this issue was not properly preserved, we decline to address it. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

**AFFIRMED.**