In re the **MARRIAGE OF**
**Jason WALTON and**
**Karisa Walton.**

**Upon the Petition of**

**Jason Walton, Appellant,**

**And Concerning**

**Karisa Walton n/k/a Karisa Kasparek, Appellee.**

**No. 97–0940.**

Court of Appeals of Iowa.

Feb. 25, 1998.

Patricia C. Kamath, Iowa City, for appellant.

J.W. McGrath of McGrath & McGrath, P.C., Keosauqua, for appellee.

Heard by HUITINK, P.J., and STREIT and MAHAN, JJ.

STREIT, Judge.

Jason Walton, father of Jake, six years, and Justin, four years, appeals the trial court's modification of a dissolution decree which ordered joint physical custody of the children. The parties agreed to share joint physical care since the time of the divorce. Since the original decree, Karisa, the children's mother, has acted as the primary care giver. Because of this and both parents having failed to cooperate in their joint custodial roles with the children, we affirm.

### I. Background & Facts.

Jason Walton and Kari Kasparek were divorced in January of 1995. At the time of the divorce, the parties stipulated and the court decreed the parents would share joint physical care of Jake and Justin. Kari was to have the boys on Sunday from six o'clock p.m. through Thursday and Jason from Friday to Sunday at six o'clock p.m. Holidays were alternated.

Both parties remarried after the divorce and live in Riverside, Iowa. Kari is married to Mark and operates an in-home day care center. Jason is married to Charity and works as a carpenter for Kari's parents at Riverside Pallets.

In February of 1996 Kari filed a petition for modification of the dissolution decree, seeking primary physical care of the children and child support. The district court modified the decree as requested. The court found the shared physical care arrangement was no longer in the best interests of the children and Kari was better suited to be the primary caretaker of the children. Jason was ordered to pay $518.19 per month child support. He appeals.

### II. Modification of Joint Physical Care Provision of Divorce Decree.

The parties stipulated to joint physical care [1] of the children in the stipulation integrated into the divorce decree. Although there is a multitude of case law stating joint physical care is strongly disfavored, see, e.g., In re Marriage of Roberts, 545 N.W.2d 340, 342 (Iowa App.1996); In re Marriage of Brainard, 523 N.W.2d 611, 614 (Iowa App. 1994), the legislature recently proclaimed joint physical care a viable disposition of a custody dispute if in the best interests of the children. 1997 Iowa Acts Ch. 175, § 199. If the parents of the children are able to cooperate and respect each other's parenting and lifestyles, a joint care arrangement can work. In re the Marriage of Swenka, 576 N.W.2d 615 (Iowa App.1998). The shared custody provisions agreed to by these parties and incorporated into the decree have not evolved as envisioned by either of the parties or the court. The parents cannot cooperate or communicate in dealing with their children. Both have interfered with the other's rights to the children. Neither party promotes the children's respect or affection for the other parent. Kari and Jason agree the joint physical care arrangement is not working.

 Courts can modify the custodial terms of a dissolution decree only when there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered. Dale v. Pearson, 555 N.W.2d 243, 245 (Iowa App.1996). The change must be more or less permanent and relate to the welfare of the children. Id. The discord between these parents and the disruption it has on the lives of their children warrants a modification of the decree to designate a primary physical care giver.

### III. Primary Care Giver.

 Because we determine it is not in the best interests of the children to be in a

1. Joint physical care means:
 [A]n award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent.
 1997 Iowa Acts Ch. 175, § 184(3).

joint physical care relationship with their parents, one of the parents must be selected as the primary physical care giver. The best interests of the children is the first and governing consideration in determining the primary care giver of the children. *In re Marriage of Rodgers*, 470 N.W.2d 43, 44 (Iowa App.1991). The parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver. *In re Marriage of Daniels*, 568 N.W.2d 51, 53 (Iowa App. 1997). We are not bound by the district court's findings but give them deference because the district court had an opportunity to view, firsthand, the demeanor of the parties and evaluate them as custodians. *See id.*

Jason vigorously argues Kari does not support his role as father to the children. He argues she has made a systematic attempt to deny him his visitation rights and has made important decisions for the boys without consulting him.[2] Jason seems especially angered by Kari's alleged attempt to have Mark replace him in the boys' lives. He is bothered by the fact the boys call Mark "dad" and Jason "real dad." This has become the focus of his appeal. Kari retorts Jason has not supported her role as the children's mother. She claims Jason uses his visitation as a "veto power" when Kari wants to do something special with the children.

Jason argues Kari has defied the provisions of the custody decree with impunity. The record clearly indicates Kari has interfered with Jason's visitation with the children. It is not acceptable for Kari to deny Jason visitation or to violate the provisions of the custody decree in any manner. She can be held in contempt of court for doing so.

■ Both parents are suitable caretakers for the children. Kari, however, is more suited to be the primary physical care giver. Kari is stable, financially secure, and has been more involved with the children's lives on a consistent basis. After de novo review, we agree with the trial court that she is a dedicated mother and has superior parenting skills to Jason. Although the parties had joint physical care of their children under the custody decree, Kari was the primary care giver of the children. Jason has not always exercised his visitation and has not paid his portion of expenses for the children. The fact Kari acted as the primary care giver is not a guarantee she will be awarded primary care giver status. *See In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa App. 1995). However, we consider that role in deciding who would better foster a healthy environment for the children. *Id.* In this case, because of Kari's predominant role in the children's lives, she is the closer parent to the children. The children's best interests are best served by being with Kari.

Kari lives in a large home with her husband, Mark, and his daughter, Amanda. Mark and Kari are expecting a child of their own. With Kari as the primary physical care giver, the boys will be more likely to develop a relationship with their half-sibling. The blended family has become well integrated. Mark has participated in the boys' activities including coaching one of their sports teams.

Kari's occupation as an at-home day care provider makes her more accessible to the children while they are in school. Her home is in Riverside, where the boys' school is located. Jason's employment often takes him outside of the Riverside area.

After de novo review, we find *both* parents have violated the terms of the custody decree at different times. The parties' complaints that the other interferes with their relationship with the children will be remedied, somewhat, by making Jason's visitation schedule less flexible. However, government cannot micro-manage peoples' lives. Kari and Jason have allowed their bitterness toward each other to interfere with the well-being of their children. The court cannot order an awakening by the parties that fully supporting Jason and Justin's relationship with the other parent is what their children need. This is something Kari and Jason must do on their own.

---

2. Kari had the boys baptized without consulting Jason. She has also made unilateral decisions regarding where the boys would attend school, their day care, and their medical care.

After de novo review, we affirm the district court's award of primary custody to Kari and all other provisions of the modified decree.

**AFFIRMED.**