**IN THE COURT OF APPEALS OF IOWA**

No. 14-0730
Filed November 26, 2014

**Upon the Petition of**
**BRIAN CHISHOLM,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning**
**AMANDA DIERKSEN,**
        Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Clinton County, Stuart Werling, Judge.

Amanda Dierksen appeals the district court's grant of joint physical custody. **REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.**

Robert J. McGee of Robert J. McGee, P.C., Clinton, for appellant.

Adrienne C. Williamson of Pillers & Richmond, Clinton, for appellee.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**BOWER, J.**

Amanda Dierksen appeals the district court's order granting her and Brian Chisholm joint physical care of their two children. Amanda claims it is in the best interests of the children to award her physical care. Amanda also asks for appellate attorney fees. On cross-appeal, Brian claims the district court erred in awarding Amanda attorney fees. We find it is in the best interests of the children to grant Amanda physical care of the children. We remand this matter to the district court for determination of Brian's visitation schedule and child support obligation. As Amanda has prevailed on appeal, we grant her request for appellate attorney fees, in part, and award her $1500. We decline to disrupt the district court's grant of attorney fees to Amanda. We reverse and remand on direct appeal, and affirm on cross-appeal.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Brian Chisholm and Amanda Dierksen are the parents of two children, O.C., born in 2008, and R.C., born in 2010. Brian and Amanda were never married. The couples' relationship began while they attended Clinton High School. Amanda became pregnant with O.C. when she was in eleventh grade. She subsequently transferred to the alternative high school where she attained a GED. Brian dropped out of high school in ninth grade. He attained a GED in 2003. In 2010, he attended a college in Michigan for about one year. During this time, Brian returned home once every month for three or four days at a time.

Brian currently resides in Clinton. Amanda lives in nearby Camanche with her boyfriend. Both Brian and Amanda are employed full time. Brian's past is

marked by encounters with law enforcement, including multiple convictions for operating while intoxicated. These offenses occurred before the birth of O.C. The record shows Brian and Amanda had ties to the National Socialist or Nazi Party. Testimony at trial shows Brian still holds these beliefs, but he claims the beliefs are based on his heritage and not on racism. He expressed his intent not to proselytize his beliefs to the children, which the district court found persuasive.

We incorporate the court's conclusions on Brian and Amanda:

It is clear that Brian has acted in the past in a manner which is neither mature nor in the best interest of the children. However, within the last three years he appears to have made significant effort to act in a mature and responsible way as a father toward his sons, including providing them with financial support and a stable home in which he can raise them in a loving environment. If Brian can suppress his need to be an iconoclast[1], then he stands the chance of raising two healthy, well-adjusted members of society.
. . . .
It is equally clear to the Court that Amanda is devoted and loving mother. Amanda's witnesses testified that she will put the children's needs above her own and she will do without in order to make sure that the children have the essentials of life. She has sought out fulltime employment in order to provide for her children when Brian's financial support was absent or minor. These are the hallmarks of a loving parent. Amanda will sacrifice her personal comfort and convenience in order to provide the best that she can for her sons.

The court granted the couple joint legal custody and joint physical care. Brian was ordered to pay child support since his monthly income was higher than Amanda's and to provide for the children's medical care through his employer's group health insurance. The court also ordered Brian to pay $4500 for Amanda's attorney fees.

---

[1] One who attacks established beliefs, ideals, customs, or institutions. Webster's New International Dictionary Unabridged 1121 (3d ed. 2002).

Amanda now appeals the grant of joint physical care. She argues it is in the best interests of the children to grant her physical care. She also asks we award her appellate attorney fees. On cross-appeal, Brian asks we reverse the court's grant of attorney fees to Amanda.

## II. SCOPE OF REVIEW

We review decisions on child custody de novo. *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III. ANALYSIS.

### A. Joint Physical Care

Amanda claims it is in children's best interest for her to have physical care. She points to her history as the children's caregiver and the extent the couple are at odds concerning care for the children. Iowa's traditional and statutory child custody standard is "the best interest of the child." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007); Iowa Code § 591.41 (1)(a) (2013). This standard provides the necessary flexibility to take the unique facts of each case into consideration. *Hansen*, 733 N.W.2d at 696. A nonexclusive list of factors used to determine the "best interest of the child" is found in Iowa Code section 598.41(3), the primary factors are: stability and continuity, the degree of

communication and mutual respect between the parties, and the extent to the parties agree on matters involving routine care. *Id.* at 696–700.

Upon our de novo review of the record, we believe the best interests of the children are served by granting Amanda physical care.

> In considering whether to award joint physical care where there are two suitable parents, stability and continuity of caregiving have traditionally been primary factors. *In re Marriage of Bevers*, 326 N.W.2d 896, 898 (Iowa 1982) (noting who during the marriage provided routine care and questioning desirability of the children's nomadic existence for sake of parents); *In re Marriage of Decker*, 666 N.W.2d 175, 178–80 (Iowa Ct. App. 2003) (past primary caregiving a factor given heavy weight in custody matters); *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998) (great emphasis placed on achieving emotional stability for children); [*In re Marriage of*] *Roberts*, 545 N.W.2d [340,] 343 [(Iowa Ct. App. 1996)] (though not controlling, due consideration to historical primary caregiver); [*In re Marriage of*] *Coulter*, 502 N.W.2d [168,] 171 [(Iowa Ct. App. 1993)] (stability "cannot be overemphasized"). Stability and continuity factors tend to favor a spouse who, prior to divorce, was primarily responsible for physical care. *See* Iowa Code § 598.41(3)(d).

*Hansen*, 733 N.W.2d at 696. "The concepts of continuity, stability, and approximation thus cut strongly against joint physical care as a quality alternative least disruptive to the children and most likely to promote their long-term physical and emotional health." *Id.* at 700. "[T]he successful caregiving by one spouse in the past is a strong predictor that future care of the children will be of the same quality. *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

When Amanda became pregnant with O.C., she began living with Brian at his grandmother's house. The couple moved into an apartment shortly before O.C.'s birth. Both parties were employed at this time, and Amanda continued to attend high school. After the birth of O.C., the couples' relationship became

strained and Amanda moved in with a friend. Amanda and her friend testified Brian was physically abusive to Amanda during this time. While the exact details of the abuse are unclear, Brian admitted his acts were not appropriate. Amanda also testified Brian refused to care for O.C. during this time or provide child support. Amanda stated she wanted to apply for child support but Brian persuaded her against the idea. Brian testified he always provided support when Amanda asked for support.

Prior to the birth of R.C., the couple resolved their differences and began living together. The couple continued to live together until Brian decided to move to Michigan to pursue a college degree in 2011. When asked why he chose to attend a college located so far away from Clinton and his family, Brian responded it was the best public school for engineering, "go big or go home." In Brian's absence, Amanda worked to support her and the children. Brian visited at least once a month and provided limited money for bills. Brian's monetary support was inconsistent. When Brian moved back to Clinton and the couples' relationship ended, Amanda rarely saw Brian and ceased receiving any financial support.

The record shows Amanda served as the de facto primary caregiver to the children. As the district court noted, Amanda consistently put the needs of the children above her own. Admirably, she sought employment to support herself and the children after Brian quit his job and left for Michigan. As noted by a leading scholar, "past caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional bonds that are so

difficult for courts to ascertain." *Hansen*, 733 N.W.2d at 696 (referencing Katharine T. Bartlett, *Child Custody in the 21st Century: How the American Law Institute Proposes to Achieve Predictability and Still Protect the Individual Child's Best Interests*, 35 Willamette L. Rev. 467, 480 (1999)). We do not criticize Brian for pursuing an education, though we question if his motives were more self-interested, rather than selfless, in making the decision to leave the area. Brian's lack of consistent monetary support during this time is also suspect. Historically, Amanda provided care and support for the children, which she continued to do after Brian left. The children's interests in "stability and continuity" are best served by granting Amanda physical care.

Additionally, the record reveals the parents are in conflict on how to raise the children. "The most ardent professional proponents of joint custody assume cooperation between parents and agreement about child rearing practices as basic requirements for joint custody." *In re Marriage of Burham*, 283 N.W.2d 269, 275 (Iowa 1979) (citation omitted). "The greater the amount of agreement between the parents on child rearing issues, the lower the likelihood that ongoing bitterness will create a situation in which children are at risk of becoming pawns in continued [relationship] strife." *Hansen*, 733 N.W.2d at 699. At trial, Brian admitted to believing in at least some of the teachings of the National Socialist Party or the Nazi Party. Amanda may have held these beliefs when she was with Brian, but the record shows she no longer holds these beliefs. Brian stated he had a picture of Adolf Hitler hanging in his home and has a swastika tattoo. Brian testified his belief in the Nazi Party was couched in his heritage and the

Parties' position on centralized banking. We find Brian's testimony on this subject wholly incredible. Further, Brian and Amanda disagree about religion. Amanda desires to take the children to church. Brian does not believe in the Christian god or other deities. We believe these conflicting beliefs between the parties will only grow stronger as the children grow older.

The court found both parents to be loving and suitable parents. The record reflects this to an extent. We find Brian should be awarded liberal visitation. To limit the amount of potential conflict between the couple, and to acknowledge Amanda for her historical role as primary caregiver to the children, we find the best interests of the children are served by granting Amanda physical care. We reverse the district court's order and remand for the calculation of Brian's child support obligation and visitation schedule consistent with this opinion.

### B. Appellate Attorney Fees

Amanda asks for appellate attorney fees. The right to recover attorney fees does not exist at common law, and fees are not to be allowed absent "a statute or agreement expressly authorizing it." *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010). Iowa Code section 600B.26 gives this court the discretion to award the prevailing party reasonable attorney fees. The decision to award appellate attorney fees rest in our discretion, and we will consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Petition of Fiscus*, 819 N.W.2d 420, 425

(Iowa Ct. App. 2012). Since Amanda has prevailed on appeal, we grant, in part, her request for appellate attorney fees in the amount of $1500.

## IV.  CONCLUSION

Granting physical care of the children to Amanda is in the best interests of the children due to her past history as the children's primary caretaker and the potential for conflict on the proper way to raise the children. Since Amanda has prevailed on appeal we award her appellate attorney fees and decline Brian's request on cross-appeal to disrupt the district court's grant of attorney fees to Amanda.

Costs on appeal are assessed to Brian.

**REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.**