# IN THE COURT OF APPEALS OF IOWA

No. 17-0683
Filed November 8, 2017

IN RE THE MARRIAGE OF ZACHARY RYAN KAPFER
AND JILL MARNEE KAPFER

Upon the Petition of
ZACHARY RYAN KAPFER,
    Petitioner-Appellee,

And Concerning
JILL MARNEE KAPFER n/k/a JILL MARNEE SWANSON,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Paul R. Huscher,
Judge.

Jill Swanson appeals a district court order denying her request to modify
the joint-physical-care provision of the decree dissolving her marriage to Zachary
Kapfer.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH
INSTRUCTIONS.**

Allison M. Steuterman of Brick Gentry, P.C., West Des Moines, for
appellant.

Zachary R. Kapfer, Clive, self-represented appellee.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Jill Swanson appeals a district court order denying her request to modify the joint-physical-care provision of the decree dissolving her marriage to Zachary Kapfer. Jill contends escalating friction in her relationship with Zachary constitutes a material and substantial change in circumstances warranting modification. Citing her efforts to involve their three children in extracurricular activities and obtain medical treatment for them, Jill maintains she should be granted physical care. Next, Jill argues the district court should have modified the decree to grant her the right to make final decisions about the children's education, health care, religious upbringing, and extracurricular activities if she and Zachary reach an impasse.

Because our de novo review of the record reveals joint physical care is not working and is having a disruptive effect on the children's lives, we reverse the district court order and remand for modification of the dissolution decree to grant physical care to Jill and liberal visitation to Zachary. But we decline Jill's second modification request—the parties will continue to have joint legal custody, providing them "equal participation in decisions affecting the [children's] legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.41(5)(b) (2012).

## I. Facts and Prior Proceedings

Jill and Zachary divorced in May 2012. They have three children together, A.M.K. (born in 2006), J.E.K. (born in 2008), and N.E.K. (born in 2010). The district court awarded the parties joint legal custody, but in accordance with a parenting plan submitted by the parties, the court ordered: "[I]n the event the

parties cannot agree as to education decisions, non-emergency health care, religious upbringing, and extracurricular activities, [Zachary] shall have the right to make the final decision."[1]  The court granted Zachary physical care until September 2013; after that time, the parties would transition to shared care.[2]

Immediately after the divorce, Jill and Zachary generally got along well. Then both parties remarried: Jill in November 2013 and Zachary in August 2014. In the months leading up to Zachary's marriage, Jill found her relationship with Zachary became strained.  In June of 2014, she filed an application to modify the physical-care provision of the custody decree, alleging a "substantial breakdown in communication" and asking the court to grant her physical care.  Jill also filed an application for rule to show cause, alleging Zachary failed to provide child support, to reimburse Jill for costs, and to attend mediation to address issues with the children.

Over the next year and a half, those matters remained pending while Jill and Zachary tried to resolve their disputes through mediation.  But the parties continued to disagree about a variety of issues, including the children's extracurricular activities, their basic medical care, and appropriate discipline practices.  Following a mediation session in October 2014, Jill and Zachary

---

[1] In a later provision, the court ordered:
> [W]henever possible the parents must discuss the issues and attempt to reach an agreement based on what is best for the children at that particular time.  If the parents are unable to reach an agreement on an issue about the children after discussing it with the other parent, either may initiate dispute resolution . . . ."

[2] Jill explained she and Zachary had agreed upon this provision because, at the time of the divorce, Jill did not yet have a home that would accommodate all three children and because she was "dealing with some anxiety and some depression" and "trying to get [herself] in a better place."  Zachary testified he agreed to the arrangement because he believed Jill was going through "a party phase in her life" and "just needed to get her party phase out."

agreed to begin communicating through the website TalkingParents.com, which allowed them to keep an accurate record of their interactions.[3]

After the district court denied Jill's request for a continuance in early February 2016, Jill voluntarily dismissed the actions. But four months later, on June 21, 2016, Jill filed a second application to modify, again asking for physical care. At trial, Jill also sought to modify the provision allowing Zachary to act as the final decision maker in the event of a disagreement between them. The court appointed a guardian ad litem (GAL) for the children at Jill's request.

In his answer, Zachary admitted to a breakdown in communication but denied it amounted to a material and substantial change in circumstances; he also requested physical care. But at trial, Zachary asked the court to deny Jill's modification request and continue the parties' existing shared-care arrangement.

The GAL filed a report with the court on February 23, 2017. She opined the shared-care arrangement was unworkable because of the increasing strain in communications and lack of cooperation between Jill and Zachary. The GAL also reasoned the parents' "very different rules at their respective homes and very different parenting philosophies . . . made transitions between the homes very difficult for the children." Citing Zachary's inflexibility regarding parenting decisions; tension surrounding Zachary's wife, Janné; and Zachary's persistent criticism of Jill; the GAL recommended the court award physical care of the children to Jill.

---

[3] TalkingParents.com is a web-based service that maintains a record of communications between parents, tracks when each parent logs in or out of the service, and indicates when each parent views a new communication. *See* Talking Parents, http://www.talking parents.com (last visited Oct. 17, 2017).

The case proceeded to trial on March 1, 2017. Jill testified her communication with Zachary had worsened so much that she could no longer bring herself to look at Zachary's acrimonious Talking Parents messages, instead relying on her father to screen her inbox and let her know when she needed to respond. She complained Zachary placed unnecessary stress on the children by refusing to allow them to participate in sports practices or games while in his care and requiring them to have separate belongings for each household, including a separate flute for A.M.K. Zachary acknowledged the parties' communication difficulties, complaining Jill frequently scheduled medical appointments for the children without informing him. He also admitted that because he lacked Internet access at his home, he tended to check Talking Parents only once a day.

The district court decided Jill had not "proved a substantial and material change in circumstances which requires a change in the shared physical care arrangement presently contained in the decree." While the court found "the [GAL's] recitation of salient facts in her [r]eport is accurate" and acknowledged Jill and Zachary's ability to communicate "has deteriorated somewhat," it concluded Jill had not demonstrated a "complete breakdown in communication" sufficient to constitute a substantial change of circumstances. But the court found the provision granting Zachary the right to make final decisions in the event of a disagreement to be "contrary to the premise of joint legal custody" and deleted that language from the decree. Jill now appeals the district court's order.

## II. Scope and Standard of Review

Because proceedings to modify the physical care provisions of a dissolution decree lie in equity, our review is de novo. *See In re Marriage of*

*Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We are not bound by the fact-findings of the district court, but we do give them weight, particularly when considering witness credibility. *See id.* Only when there has been a failure to do equity will we disturb the district court's determination. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

### III. Analysis

As the party requesting a modification of the physical-care provision, Jill had the burden to prove by a preponderance of the evidence that "conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted). In addition, the changed circumstances must (1) not have been contemplated by the decretal court, (2) be more or less permanent, and (3) relate to the children's welfare. *Id.* Finally, Jill was required to prove she could more effectively minister to the children's needs. *See id.* Relying upon *In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016), Jill argues the district court erred in finding she had not demonstrated these requirements.

### A. Material and Substantial Change in Circumstances

Jill contends she satisfied her burden of proving a material and substantial change in circumstances because she and Zachary can no longer communicate effectively. She identifies three key areas of disagreement, which she believes demonstrate the extent of the parties' communication breakdown: (1) the children's medical care, (2) the children's extracurricular activities, and (3) the parties' parenting styles. Jill maintains Zachary "often refuses to acknowledge a

health or behavioral problem, indicating that the kids do not have any issues while staying with him and suggesting [Jill] is either lying about the problems or that the kids only have problems when they are with her." Next she asserts Zachary "refus[es] to take the children to extracurricular activities that he did not arrange when they fall on his days with the children." And she alleges Zachary needlessly forbids the children to take personal belongings between their households and frequently disciplines the children a second time for behavior that occurred while they were in her care.

Even Zachary, who refutes many of Jill's allegations and purports to defend the district court's decision, devotes much of his argument on appeal to describing incidents in which the parties failed to communicate. He accuses Jill of "mak[ing] unilateral decisions" about the children's medical care, taking the children to counseling and other medical appointments, and keeping the children home from school without his knowledge.

Many of the parties' difficulties stem from their increasing inability to communicate with each other. Although the parties began using Talking Parents to resolve their disputes, the web-based system appears to have had the opposite effect. In a string of electronic messages, Jill and Zachary take turns berating the other for attempting to communicate via other means. As the GAL noted, Zachary, in particular, often sent Jill lengthy messages that were both "condescending and critical."

While Zachary and Jill originally had been able to negotiate transitions between their households, the parents' increasingly rancorous relationship took a toll on the children. The GAL reported the transitions between the two homes

were "very difficult" for the children because Zachary and Jill imposed different rules and employed different parenting philosophies. Zachary and Janné insisted the children call Janné "mom" and they referred to Jill as "the other mom." A.M.K. expressed sadness that Zachary and Janné sometimes "make fun" of her mom. The younger children have experienced problems during the shared-care arrangement. J.E.K struggled a bit in school and required a tutor to catch up in reading. N.E.K. had occasional temper tantrums.

When shared custody provisions do not evolve as envisioned by the parents or the court issuing the decree, and parents cannot cooperate or communicate concerning their children, it is appropriate for a district court to find a substantial change in circumstances and modify custody. *Harris*, 877 N.W.2d at 441 (quoting *In re Marriage of Hansen,* 733 N.W.2d 683, 698 (Iowa 2007) for the proposition that a key consideration in deciding if joint physical care is in the children's best interests is the ability of the parents to "communicate and show mutual respect"). As our court noted in *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002):

> Discord between parents that has a disruptive effect on children's lives has been held to be a substantial change of circumstance that warrants a modification of the decree to designate a primary physical caregiver if it appears that the children, by having a primary physical caregiver, will have superior care.

On our de novo review, we find the mounting discord between Zachary and Jill disrupted the lives of their three children and warranted modification of the decree. The district court's confidence in the parents' ability to communicate in their children's best interests under a joint-physical-care arrangement was misplaced. *See Harris*, 877 N.W.2d at 441. We conclude Jill satisfied her

burden to prove a material and substantial change in conditions since entry of the decree that were not contemplated by the decretal court, are more or less permanent, and involve the children's welfare.

### B. Parent with Ability to More Effectively Meet Children's Needs

The next question is whether Jill or Zachary can "administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives." *See In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998). While Jill is not blameless in the failure of the joint-physical-care arrangement, we conclude she is better suited than Zachary to minister to the children's needs.

Significantly, the record shows Jill would be more amenable to promoting the children's relationship with Zachary than he would be encouraging their interaction with Jill. *See In re Marriage of Holst*, No. 02–0381, 2002 WL 31641452, at *2 (Iowa Ct. App. Nov. 25, 2002) ("[A] parent's willingness to encourage contact with the noncustodial parent is a critical factor in determining custody."). For example, the children did not feel comfortable calling Jill from Zachary's house but had no reluctance to call Zachary from Jill's house. Neither does it foster a positive relationship when Zachary and Janné refer to Jill as "the other mom" at their home and make derogatory comments about Jill in front of the children. We also find Jill has been more committed than Zachary to allowing the children to engage in the extracurricular activities they enjoy—like dance, flag football, and soccer. And Jill has been the parent who has secured medical treatment for the children. Accordingly, we conclude the decree should be

modified to Jill having the physical care of the children. On remand, the district court should establish a schedule for visitation by Zachary and set child support.

### C. Final-Decision-Maker Provision.

Lastly, the district court vacated language in the original decree that granted Zachary the power to act as final decision maker "in the event [the] parties cannot agree as to education decisions, non-emergency health care, religious upbringing, and extracurricular activities." On appeal, Jill contends the district court should have modified the decree to grant *her* that power. We disagree. Allocating physical care of the children to Jill should not deprive Zachary of his rights and responsibilities as their joint legal custodian. Specifically, he should continue to enjoy equal participation in decisions impacting the children's "legal status, medical care, education, extracurricular activities, and religious instruction." *See* Iowa Code § 598.41(5)(b). Because Jill and Zachary are joint legal custodians, they have an "ongoing mutual responsibility to cooperate in the best interests of the children." *See Harris*, 877 N.W.2d at 444.

### IV. Conclusion.

We modify the dissolution decree and allocate to Jill the physical care of the three children. We remand to the district court to establish a visitation schedule and to determine child support based upon the parties' present circumstances. We affirm the district court's action vacating the final-decision-maker provision in the original decree. Costs are taxed to Zachary.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**