# IN THE COURT OF APPEALS OF IOWA

No. 20-0679
Filed June 16, 2021

IN RE THE MARRIAGE OF DIANN LYDOLPH
AND CRAIG LYDOLPH

Upon the Petition of
**DIANN LYDOLPH,**
    Petitioner-Appellee,

**And Concerning
CRAIG LYDOLPH,**
    Respondent-Appellant.

_____


        Appeal from the Iowa District Court for Van Buren County, Shawn Showers,

Judge.


        A father appeals an order granting the mother's request to modify the

physical-care and child-support provisions in their divorce decree.  **ORDER**

**AFFIRMED; REMANDED FOR ADDITIONAL FINDINGS.**


        Craig Lydolph, Stockport, self-represented appellant.

        Bryan J. Goldsmith and Carly M. Schomaker of Gaumer, Emanuel,

Carpenter & Goldsmith, P.C., Ottumwa, for appellee.


        Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

In their January 2016 divorce decree, Craig and Diann Lydolph agreed to joint physical care of their three children. Three years later, Diann petitioned to modify the decree based on her planned move to a Missouri residence nearly seventy-five miles away. The district court awarded Diann physical care, holding it was in the children's best interests to relocate with their mother. Craig now contests that award, asserting Diann's move did not constitute a substantial change in circumstances warranting modification. He asks us to dismiss the case so the parents can return to joint physical care. As an alternative, he urges he should have physical care of the children. He also challenges the changes to child support and cash medical support. Diann requests appellate attorney fees.

Because Diann met her burden of proving a substantial change in circumstances and she has been the children's primary caregiver since the decree was entered, we affirm the award of physical care to Diann. Further, we uphold the monthly child support obligation under the modified decree. As for the cash medical support order, we remand for the district court to consider any proof of Craig's health insurance plan in deciding if that payment is necessary. Lastly, we grant Diann's request for appellate attorney fees.

## I. Facts and Prior Proceedings

Craig and Diann separated in 2015 after a decade-long marriage. Diann stayed in the marital home in Stockport, while Craig moved to Fairfield. They agreed to fifty-fifty parenting of their three children, born in 2009, 2010, and 2013. Yet Diann assumed the majority of the caregiving responsibilities because of Craig's demanding work schedule as a paramedic. According to Diann, she

dropped the children off at Craig's house every other weekend and once during the week.

A year later, they divorced. Despite the reality of their caregiving arrangement, they stipulated to joint physical care of the children. The district court approved their agreed-upon alternating schedule in which each parent agreed to "have the children overnight three nights one week and four nights the other week." The decree provided, "The parties will work together to establish the schedule, keeping in mind the children's schedules." On legal custody, the decree required the parents to notify one another of the children's medical needs and to pay fifty percent of the children's expenses.

Following the dissolution, Craig paid off the marital home debt and has lived there ever since. Diann rented a house a few miles away. For the next two years, the parents disregarded their agreed-upon fifty-fifty schedule. Craig worked several twelve-hour shifts during the week, so the children relied on Diann for their day-to-day routine. Being self-employed, Diann was able to adjust her work hours based on the children's needs. It was "normal" for Craig to text Diann every Sunday to let her know when the children could stay over during the week.

During that time, both parents entered long-term relationships with new partners. Diann met Dave in 2016, and they began dating long distance. On her free weekends, Diann drove one and one-half hours to La Grange, Missouri, Dave's hometown. She began taking the children with her once or twice a month. A year later, Craig married Jaci, and they had a daughter together.[1]

_____

[1] Craig has another daughter with a different mother. After a custody battle, the mother was awarded physical care and Craig received visitation.

Two years into co-parenting, Craig confronted Diann about their unequal time with the children. Their conversation occurred over text messages. Craig messaged: "I really don't want to start an argument, that's not my intent . . . but it seems like I have lost my 50% of time with the kids." He added, "I feel like you are trying to alienate me from the kids." Diann replied: "You never ask for them. Start asking for them. It's as simple as [t]hat!" In exchange for Craig's assurance that he would provide his weekly schedule in advance, Diann agreed that she would keep him better informed about the children's activities and medical appointments.

In early 2018, Diann and Dave became engaged. That November, Diann notified Craig that she intended to relocate with the children to Dave's residence in La Grange. Before deciding to move, Diann asked the children if they wanted to live with her in Missouri or stay in Stockport with their father. She said: "They instantly told me they were going to live with me." Soon after, Diann changed her permanent residence and moved most of her and the children's belongings to Missouri. She researched local elementary schools and extracurricular activities in anticipation of the move.

About the same time, Craig insisted on following their agreed-upon fifty-fifty parenting schedule. According to Diann, his sudden shift occurred after he learned about her decision to move with the children.

In March 2019, Diann petitioned to modify the physical-care, visitation, and child-support provisions of the decree to accommodate the greater distance between her new household and Craig's residence. She alleged that, since 2016, there had been several substantial and material changes in the parties'

circumstances necessitating modification. These four changes formed the basis of her petition:

1. She had been providing greater stability and ability to care for the children.

2. Craig had failed to follow the agreed-upon parenting schedule and, "instead, exercised sporadic visitation with the children approximately one night per week and every other weekend."

3. She planned to move to La Grange.

4. It was in the children's best interests to live with her, and Craig to have reasonable visitation.

Following a March 2020 modification hearing, the district court awarded Diann physical care. The court ruled Diann's move to La Grange after her engagement was a substantial change in circumstances that "could not have been contemplated at the time of the decree." Finding joint physical care was "not feasible with the parties living 75 miles apart," the court agreed to modify the physical care provision.

In awarding physical care to Diann, the court considered "the fact that Diann has primarily cared for these children since their birth." The court noted: "The children, while obviously bonded to Craig, are accustomed to their mother being their primary caregiver." With that modification, the court provided Craig "reasonable and liberal visitation," including every other weekend. The court also increased Craig's monthly child support obligation from $170 to $600 and ordered him to pay another $110 per month for cash medical support. Each party was responsible for their own attorney fees. Craig appeals the modification order.

**II. Scope and Standard of Review**

We review an order modifying a dissolution decree de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the district court's fact findings, especially on credibility of witnesses, but they do not bind us. *Id.*

**III. Analysis**

**A. Physical Care**

The first issue is whether there has been a material and substantial change in circumstances since the January 2016 decree that justifies modifying the custody provision. *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). As the parent seeking modification, Diann bears a "heavy burden" of proving "that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The new circumstances must affect the children's welfare and "be more or less permanent." *Id.* And they "must not have been contemplated by the court when the decree was entered." *Id.*

Representing himself on appeal, Craig argues the district court erred in finding Diann's move to Missouri constituted a change sufficient to merit modification of physical care. He claims the move did not qualify as a substantial change because the distance between his residence and Diann's new household is only seventy-five miles. He relies on Iowa Code section 598.21D (2020), which gives the district court discretion to decide whether a parent's relocation of "one hundred fifty miles or more" constitutes a substantial change in circumstances.

But because section 598.21D is permissive, a move of less than that distance may qualify as a substantial change depending on the specific facts of the case. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 40 n.10 (Iowa 2015) (Waterman, J., dissenting) (noting the statute's language, "a court may consider," suggests "[a] move of more than 150 miles alone may not be a substantial change under some circumstances, and a move of less than 150 miles may constitute a substantial change under other circumstances"). True, in *In re Marriage of Howe*, 471 N.W.2d 902, 903 (Iowa Ct. App. 1991), we held "[t]he moving of the children a mere distance of forty-two miles, standing alone, is not the type of change of circumstances contemplated either by statute or case law." Yet we concluded in more recent cases that moves of less than 150 miles "triggered the need to abandon joint physical care." *In re Marriage of Eggeling*, No. 18-0234, 2019 WL 478818, at *3 (Iowa Ct. App. Feb. 6, 2019); *see also In re Marriage of Vesey*, No. 18-1707, 2019 WL 3317910, at *3 (Iowa Ct. App. July 24, 2019).

Like those recent cases, the circumstances of Diann's move warrant a modification of the shared-care arrangement. *See Frederici*, 338 N.W.2d at 160 (listing additional factors to consider in deciding whether to modify joint physical custody, including the reason for the move, location, impact on children, and impact on the nonmoving parent's access to the children).

Regardless of distance, the parties have repeatedly failed to follow the fifty-fifty shared-care schedule incorporated in the dissolution decree. *See Harris*, 877 N.W.2d at 441 ("We conclude the shared physical care provisions in this case have not evolved as envisioned and the children will benefit from a modification that designates a primary physical caregiver."). Diann insists the lack of equal

parenting stems from Craig's inability to communicate and his inflexible work schedule. In contrast, Diann emphasizes that her ability to set her own hours during the week allows her to prioritize the children's needs. The record supports her contention.

For over two years, the children were most often in Diann's care. On weekdays, Diann maintained their day-to-day routines, scheduled their appointments, and attended their extracurricular activities. Although Craig points out that his work schedule has remained the same "for the past [six] years of Tuesday, Wednesday, Thursday every week from 7am to 7pm," his involvement with the children was inconsistent through 2018. Given the historical limits of his weekday caregiving, the move will not significantly reduce Craig's access to the children. Plus, the modified decree gives Craig liberal visitation.

Craig disputes the visitation schedule, asserting, "Going from seeing my kids [fifteen] out of thirty days to what equates to [three] days a month now is not fair nor liberal." But a decision to modify joint physical custody does not hinge on the perceived fairness to the parents. *See Hansen*, 733 N.W.2d at 695. Rather, we must do what is in the children's best interests. *Id.* A shared-care arrangement would place an undue burden on the children, especially during the school year. Craig's own admission supports this conclusion. He testified: "As far as school, [the children are] going to have to be in one school or the other. I mean, I don't know. Monday through Friday schedule is going to be fairly well set."

Further, we find Diann's move to Missouri was not a change contemplated by the court when the decree was entered. The court determined that Diann's recent engagement motivated her decision to move, which then "present[ed] a

logistical issue for joint physical care." We agree. Despite Craig's attempts to discredit Diann's testimony, the court believed Diann's explanations about her move. We decline to second-guess the court's credibility finding. *See Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002). Nor do we see any proof that Diann was motivated by "a desire to defeat [Craig's] visitation rights or undermine his relationship with the children." *See Frederici*, 338 N.W.2d at 160.

Viewing the evidence as a whole, we conclude Diann's move is a material and substantial change in circumstances not contemplated at the time of the decree that warrants a modification of the physical-care provision.

Having found a substantial change in circumstances, the second issue is whether the district court erred in awarding Diann physical care of the children. Craig insists that he should be the primary custodian "based on the evidence provided that he is more stable."

To determine who should be awarded physical care, we consider which parent can provide better care to the children. *Melchiori*, 644 N.W.2d at 368–69. As in initial custody determinations, our "first and governing consideration" is the children's best interests. *Walton*, 577 N.W.2d at 871. We seek "to place the children in an environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695. Diann carries the burden of proof to show she is better able to minister effectively to the children's well-being. *See Frederici*, 338 N.W.2d at 158.

Craig's main contention is that the children's relocation to Missouri will disrupt their sports, activities, and relationships with extended family and friends in the Stockport area. While we acknowledge an out-of-state move will require

adjustments, we give greater weight to "the emotional and environmental stability offered by each parent" over the stability of the children's physical surroundings. *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa 1998). And when the children, as here, are at the critical ages of development, keeping them close to their primary caregiver is the "least disruptive emotionally" to the children. *See id.*

With that in mind, we find Diann's track record as the children's primary caretaker demonstrates that she is better equipped to provide that emotional stability in the future. Although the parties agreed to joint physical care, the record is clear that Diann has provided the majority of the children's care since the court entered the decree. Even before then, witnesses attested to Diann's leading role in maintaining the children's day-to-day routine and meeting their physical and emotional needs. Because Diann can adjust her work schedule to align with the children's routine, she is able to be home for the children on a more consistent basis. We agree with the district court's sentiment that "Craig is a stable adult . . . . But Diann has demonstrated throughout the children's lives that she is the more hands-on parent."

The record also shows the children will have ample opportunities to participate in programs and activities in their new hometown. According to Diann, the children have visited Missouri many times and like it there.[2] And the distance is not so great that the children cannot maintain a close relationship with Craig,

---

[2] Craig criticizes the admission of testimony relating to the children's preferences on whether they want to move with their mother. But Craig's complaint is misdirected because the district court expressly gave "little weight to the children's preferences given their young ages" in the modification order. We do not view this as an issue on appeal.

extended family members, and friends.  As the district court noted: "The children will be spending a great deal of time in Stockport between every other weekend and half the summer."  The court also gave Craig the right to make reasonable requests "to have parenting time with the children during the week on a school night if he has the day off from work and the proposed time does not unreasonably disrupt the children's schedule."  Because the court ensured Craig's continued involvement with the children, we conclude their best interests are served by relocating with Diann to Missouri.  Thus, we affirm the award of physical care to Diann.

## B.  Child Support and Cash Medical Support

Craig next asserts that his child support obligation under the modified decree should be adjusted "according to guidelines with Diann's falsified income being set at an adjudicated rate."  Craig also asks us to remove the cash medical support order, claiming "he already pays deductibles on full coverage health, dental, and vision insurance."  Diann does not address these contentions on appeal.

In modifying the child support provision under the original decree, the district court found "Craig's child support amount should deviate slightly from the guidelines to avoid unjust hardship based on his financial situation and additional dependents."  On appeal, Craig does not advance a proper basis for recalculating his obligation based on the child support guidelines.  So we affirm the district court's order on child support.

As for the cash medical support order, the record lacks sufficient evidence of Craig's health insurance plan for us to address his contention.  At the hearing, the district court learned through Diann's testimony that the children have been

covered by Title 19 since the parties separated in 2015. But neither party presented any evidence on the costs associated with the income-based program or whether a different health benefit plan was available to Craig. To that end, we remand for the court to allow Craig to offer proof of his health insurance plan. *See In re Marriage of Van Zee*, 488 N.W.2d 721, 724 (Iowa Ct. App. 1992) ("We should not determine health insurance premiums should be paid in addition to support payable under the guidelines without knowledge of the costs of such insurance."). If he offers such proof within thirty days of issuance of procedendo, the court should modify the cash medical support provision of the modified decree based on the premium costs. *See* Iowa Code § 598.21B(3).

**IV. Attorney Fees**

Diann requests $5000 in appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within our discretion. *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision. *Id.* Considering all the relevant factors, we grant Diann's request for $5000 in attorney fees for the appeal. We assess the costs on appeal to Craig.

**ORDER AFFIRMED; REMANDED FOR ADDITIONAL FINDINGS.**