## IN THE COURT OF APPEALS OF IOWA

No. 22-0766
Filed January 25, 2023

**ANNA JOY WISE BINDERT,**
  Petitioner-Appellant,

**vs.**

**ZACHARY WAYNE DEBOWER,**
  Respondent-Appellee.
_____

Appeal from the Iowa District Court for Benton County, Christopher L. Bruns, Judge.

A mother of a child appeals an order granting the father physical care.

**AFFIRMED AS MODIFIED AND REMANDED.**

Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant.

Bruce J. Toenjes of Nelson & Toenjes, Shell Rock, for appellee.

Considered by Vaitheswaran, P.J., Ahlers, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**VAITHESWARAN, Presiding Judge.**

A mother of a child appeals an order granting the father physical care. The child was born in 2013 to Anna Joy Wise Bindert and Zach Wayne DeBower. After the parents separated, they agreed to rotate care of the child on a weekly basis. Meanwhile, Bindert married and moved to a town about sixty miles away from the town in which the child attended preschool. The move placed her approximately midway between her place of work and her husband's place of work. The parents continued the rotating schedule, only reaching an impasse when it was time to enroll the child in kindergarten.

Bindert filed a petition for custody, visitation, and support. The district court entered a temporary order granting Bindert physical care.

A day after the order was filed, Bindert sustained severe injuries in a car accident and was placed in an induced coma. DeBower filed an "emergency motion for temporary order" seeking to have the child transferred to him. The district court "held [the prior order] in abeyance . . . until [Bindert was] again able to at least make decisions related to exercising her parental responsibilities." The court granted DeBower temporary physical care of the child subject to Bindert's filing of an affidavit "indicating she [was] no longer in a coma and her medical condition [would allow] her to make decisions consistent with exercising her parental authority." The court stated the stay of the original order would be lifted at that point and physical care would be "automatically transferred to" Bindert, subject to either parent's right to seek a modification of the original temporary order.

The child was transferred to DeBower and attended preschool near where he lived. Seven months after the accident, Bindert filed an affidavit attesting to "a full recovery" and "the ability to make decisions concerning [her] child and to exercise parental authority." DeBower did not file a resistance. The district court reinstated the original order and transferred "temporary primary care of" the child to Bindert, who no longer earned wages.

When the case proceeded to trial, the child was eight years old, had been in Bindert's physical care for a year and eight months, and had been enrolled in a school district near Bindert's home. Following trial, the district court acknowledged this was "a close case because of the established pattern of primary care with" Bindert and because of "the fact that both parties [were] clearly very competent parents." But the court found DeBower "more supportive of [the child's] relationship with" Bindert. The court also stated Bindert's "change to being a stay-at-home mother, combined with [DeBower's] work schedule, "actually weigh[ed] in favor of a care/visitation schedule that place[d] [the child] with [Bindert] in the summer and with [DeBower] during the school year." The court ordered the child transferred to DeBower's physical care, subject to completion of the remaining few weeks of the school year and a summer transition period. Bindert appealed.

## I. *Physical Care Determination*

Bindert contends the district court's physical care determination was not in the child's best interests. *See* Iowa Code § 600B.40(2) (2019) (referencing section 598.41(3) and factors bearing on the best interest of the minor child); *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) ("It is axiomatic that we are concerned

above all else in child custody cases with the best interests of the child.").  On our de novo review, we agree.

### A.  Caretaking Ability

Neither DeBower nor any other witness disputed Bindert's ability to care for the child following the accident.  Nor was there any serious disagreement about the quality of Bindert's care in the year and eight months preceding trial. Although DeBower mentioned Bindert's excessive consumption of alcohol following the child's birth, Bindert testified her alcohol issues occurred when she was in her early twenties, seven years before trial. The district court found "concerns about ongoing alcohol abuse" were "not a factor in whether it [was] in [the child's] best interest to award primary care to [Bindert]."  The court further found Bindert was "able to be a full-time parent to" the child.  The record supports these findings.

### B.  Supporting Other Parent's Relationship with the Child

The primary question was whether Bindert would support the child's relationship with DeBower.  *See Armstrong v. Curtis*, No. 20-0632, 2021 WL 210965, at *6 (Iowa Ct. App. Jan. 21, 2021) ("The Iowa courts have been clear that the ability to support the other parent and not exhibit hostility or ill will toward them is an important factor to consider in making a custodial award." (citing *In re Marriage of Johnston*, No. 01-0606, 2002 WL 535104, at *2 (Iowa Ct. App. April 10, 2002))).  The district court answered no to this question.

The court first addressed the parents' choice of schools.  The court found that Bindert "unilaterally" selected the school district the child would attend.  While true, there is more to the story.  Six months before the child was slated to start kindergarten, DeBower, rather than Bindert, unilaterally enrolled her in a school

district close to his home. At trial, he conceded receiving a text message from Bindert a month before he made the decision asking to discuss school options for the fall. DeBower also conceded Bindert tried to discuss a school arrangement that would have allowed the parents to pursue a joint physical care arrangement. He said they met "a few times, talked face-to-face about the situation," and "talked over the phone on it." Bindert received no response to her suggested list of schools located between their homes.

Bindert did not waver on her assertion that DeBower was the parent who initiated the impasse. In her affidavit supporting her request for temporary physical care, she attested that DeBower "went behind [her] back and enrolled" the child in the school district of his choice "without discussing this with [her]." She further attested that she attempted to work with him to resolve the issue. Notably, the district court judge who considered the parents' request for temporary physical care cited Bindert's efforts to reach an agreement with DeBower as a reason to grant her temporary physical care. While he faulted her for moving, he also criticized DeBower for thinking "he could just sit back and place the child in the . . . [d]istrict" of his choice. Bindert enrolled the child in a district close to her home only after it became clear that DeBower would not reconsider his decision. Because Bindert was granted temporary physical care, the child spent first and second grade in the school of Bindert's choice.

Both parents used the choice of schools to gain leverage in the physical care determination. *See In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998) (stating "both parents have violated the terms of the custody decree at different times"). But there is little evidence that Bindert consistently undermined

DeBower's relationship with the child once she re-assumed physical care following the accident.

The first piece of evidence cited by DeBower was Bindert's decision to change the time of a parent-teacher conference without informing DeBower. Bindert essentially conceded she made the fifteen-minute change. DeBower nonetheless attended. Assuming Bindert modified the time to prevent DeBower from attending, her conduct appeared to be an isolated exercise of poor judgment rather than a concerted effort to minimize DeBower's role. DeBower agreed the parents were able to effectively coordinate parent-teacher conferences and agreed he attended all the child's conferences. He also learned about and attended other school activities such as a "doughnuts with dad" event. We are not persuaded Bindert engaged in a pattern of excluding DeBower from school events.

In a similar vein, DeBower asserted Bindert did not allow the child to see a school counselor. But the most DeBower could point to was Bindert's claimed statement to the child that other children might need a counselor more than she did. That statement aligned with the testimony of Bindert's husband, who said the child saw the counselor but, after a while, went "more to see the counselor's dog than the counselor."

We are not persuaded Bindert's conduct was sufficient to warrant a transfer of physical care to DeBower. *Cf. In re Marriage of Musfeldt*, No. 13-1563, 2014 WL 2885245, at *3 (Iowa Ct. App. June 25, 2014) (affirming denial of the father's request for joint physical care where the father's conduct led to charges being filed against the maternal grandparents for removing a child's wagon from the father's back patio); *In re Marriage of Stockdale*, No. 09-0559, 2010 WL 624912, at *3

(Iowa Ct. App. Feb. 24, 2010) (reversing the denial of an application to modify physical care where the father failed to inform the mother of his conviction for soliciting sex from children on the internet and misrepresented the location of his residence).

### C. Time with the Child

As noted, the district court partially based its decision to transfer physical care on the fact that Bindert was available to care for the child on a "24/7" basis. We are persuaded her full-time availability augured in favor of leaving the child in her physical care. *See In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998) (stating mother's "occupation as an at-home day care provider ma[de] her more accessible to the children while they are in school"). We conclude Bindert should have been granted physical care.

## II. Appellate Attorney Fees

Bindert seeks appellate attorney fees. Iowa Code section 600B.26 authorizes an award of reasonable attorney fees to the prevailing party.

Bindert did not earn wages but received disability income of $18,132 annually.[1] DeBower earned three times that sum. Given the income disparity, we order DeBower to pay $3000 toward Bindert's appellate-attorney-fee obligation.

## III. Disposition

We modify the physical care portion of the decree. Bindert shall have physical care of the child subject to visitation with DeBower under the terms he

---

[1] DeBower argues Bindert "failed to apply for Social Security disability benefits . . . for herself." To the contrary, Bindert testified she applied for and was approved for disability benefits in the amount of $1511 per month.

requested in the joint pretrial statement filed on February 11, 2022.  We remand

for recalculation of child support.[2]

**AFFIRMED AS MODIFIED AND REMANDED.**

---

[2] Bindert testified she had yet to apply for child disability benefits on her account because, when she applied for herself, DeBower had temporary physical care of the child.  She stated she would apply if granted physical care.