# IN THE COURT OF APPEALS OF IOWA

No. 23-1240
Filed May 8, 2024

IN RE THE MARRIAGE OF BRANDIS KAY COWERN
AND DAVID READ COWERN

Upon the Petition of
BRANDIS KAY COWERN,
        Petitioner-Appellee,

And Concerning
DAVID READ COWERN,
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Husband appeals from a district court order modifying the physical-care provision of a dissolution-of-marriage decree. **AFFIRMED**.

Kolby P. Warren of McCormally & Cosgrove, PLLC, Des Moines, for appellant.

Chira L. Corwin of Corwin Law Firm, Des Moines, for appellee.

Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

David Read Cowern—who goes by his middle name, Read—appeals from the district court's order modifying the physical-care provision of the decree dissolving his marriage with Brandis Cowern. The original decree placed Read and Brandis's two children in their joint legal custody and joint physical care. But since the decree, Read and Brandis have proved unable to effectively communicate, causing recurring conflict when carrying out the joint-physical-care arrangement. As a result, the district court modified the decree to place the children in Brandis's physical care with only visitation for Read. On appeal, Read does not dispute the need to modify the decree. But he asserts the district court should have instead granted him physical care or awarded greater visitation.

We agree with the district court and the parties that the decree should be modified. Our review of the record reveals a serious breakdown in communication that undermines the continued viability of joint physical care. Deciding which parent should have physical care presents a closer call. While Read indeed has positive parenting qualities and no doubt loves the children, we agree with the district court that it is in the children's best interests to be placed in Brandis's physical care. The modified decree prioritizes stability by extending the children's stay with Brandis, setting firm drop-off and pick-up times, and establishing transportation obligations—all of which will reduce points of conflict and serve the children's best interests. For these same reasons, we cannot say the amount of Read's visitation is inappropriate. We also award Brandis $3000 in appellate attorney fees as she requests.

## I.      Background Facts and Proceedings

Read and Brandis were married in 2008.  They share two children—a son and a daughter.  In 2019, Read and Brandis divorced, and the decree provided for joint legal custody and joint physical care.  Relevant here, the physical-care provision required Read and Brandis to "work together on a parenting plan that best serves the interests of the minor children."  But if they could not agree, the decree provided a rotating 2-2-3 schedule—where they would exchange the children every two or three days.  The schedule did not specify what time drop-offs or pick-ups would be, nor did it set forth which parent was responsible for transporting the children to or from the other parent's home.

Relations between Read and Brandis did not improve after the divorce. Read was held in contempt for willfully violating the decree.  Read's ensuing noncompliance resulted in mediation, which showed he was in default on his child support and alimony obligations and had failed to transfer Brandis's share of a retirement account.  And Read was barred from the children's school for an entire school year after two incidents involving Brandis—one when he created a scene upon seeing Brandis also present at the school, and another when discussing Brandis and another family inappropriately.

In August 2021, Brandis petitioned to modify the decree's physical-care provision, seeking physical care of the children.  Read's answer denied Brandis's allegations and did not include a cross-claim for modification.  But he still requested that the children be placed in his physical care.  The matter proceeded to a two-day bench trial in April 2023, where each parent continued to seek physical care.

The district court granted Brandis's petition to modify the decree, finding the evidence showed a degree of discord between the parents that required modification. The court granted Brandis physical care and Read visitation, setting a new schedule with established and consistent 6:00 p.m. pick-up times and transportation obligations. Under the new schedule, Read has four overnights with the children every fourteen days—every Wednesday night and every other Friday and Saturday night. After unsuccessfully moving for reconsideration of the modification order, Read now appeals.

## II.     Modification of Physical Care

Parties seeking to modify the physical-care placement in a dissolution decree must show that because of material and substantial changes in conditions since the decree—more or less permanent and not originally contemplated by the court—the children's best interests require altering the placement. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). The moving party's burden is heavy—the law prioritizes stability for children, so only "the most cogent reasons" will justify disrupting an established physical-care framework. *In re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983).

To that end, our guiding principle is "what is best for the *child*"—not what is "fair[est] to the *spouses*." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We consider the factors in Iowa Code section 598.41(3) (2021) and those discussed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See Hansen*, 733 N.W.2d at 696. If modification is warranted, we award physical care to "[t]he parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy

physical and emotional lives." *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

We consider all these issues de novo. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). Still, modification petitions rise and fall on their own facts—"[p]rior cases have little precedential value." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). So we give weight to the district court's firsthand assessment of the evidence and witnesses, even if we are not bound by it. *Id.*

To begin, the parties agree that modification is warranted. On appeal, Read only argues the district court erred in not awarding him physical care or not increasing his visitation—he never asks to preserve joint physical care. And we agree there is ample evidence in the record to show a substantial change in conditions warranting modification.

The breakdown between Read and Brandis's ability to communicate has rendered the current scheme inconsistent and confusing for the children. A review of the parties' communications shows repeated instances of the parties agreeing to a particular pick-up time or childcare schedule, only to have Read alter it at the last minute. Read often knowingly disregarded Brandis's work hours—scheduling or trying to schedule appointments, activities, or pick-ups during her work or commute hours. And throughout their discussions, Read is often condescending and insulting, which makes collaborating difficult.[1]

---

[1] In fairness, Brandis at times also communicates poorly. But on the whole, we agree with the district court's assessment that Read "has been unreasonably uncooperative with [Brandis] in shared-care-parenting" of their children.

While the decree only affords a right of first refusal—to give the other parent the first chance to care for the children when the parent with care cannot—for out-of-town trips, Brandis often asks Read if he wants to watch the children before she hires a babysitter. Read does not extend the same courtesy. And when asked to watch the children, Read would sometimes agree only if Brandis sacrificed additional nights with the children, paid him, or "agree[d] to do away with all future" alimony.

We will uphold physical-care modifications when discord between the parents undermines the continuing viability of joint physical care. *See, e.g.*, *In re Marriage of Wood*, No. 15-2204, 2016 WL 4384407, at *1 (Iowa Ct. App. 2016) (explaining "post-dissolution hostility and the inability to communicate is sufficient to establish a substantial change in circumstances"); *Melchiori*, 644 N.W.2d at 368; *Walton*, 577 N.W.2d at 870. Because we agree with the district court and the parties that modifying joint physical is warranted, we proceed to the tougher question—whether it is in the children's best interests to be placed in the physical care of Brandis rather than Read.

While Read indeed has positive parenting qualities and no doubt loves their children, Brandis meets her burden to show that placing their children in her physical care is in the children's best interests. One factor we consider is "[w]hether each parent can support the other parent's relationship with the child[ren]." Iowa Code § 598.41(3)(e); *see also In re Marriage of Barnhart*, No. 12-2251, 2013 WL 2372309, at *4 (Iowa Ct. App. 2013). Read does not see a problem with how he speaks to Brandis, testified that the children call his new wife "Fun Mom," and has often refused to be in the same room as Brandis—even

when visiting one of the children in the hospital or when the children had a school concert. We thus agree with the district court's finding that Brandis "is more likely to ensure that the children spend adequate time with [Read] than would be the case if [Read] was the primary care parent doling out visitation to [Brandis]."

We also find it significant that Read allowed the children to be tardy eighteen and twenty times, respectively, in one school year. The tardiness issue improved only after Brandis filed this modification action. Likewise, Read never followed through on his obligation under the 2019 decree to divide a retirement account and provide Brandis with her share. Despite being ordered during a 2021 mediation to do so, Read only completed the transfer a few weeks before this modification trial in 2023. Read is similarly not current on his child support and alimony obligations, testifying that while he hopes to pay the overdue amounts soon, contributing to his retirement account is equally important to him as paying child support. Thus, despite Read's arguments on appeal that he is the superior parent, we agree with the district court that "[a] consistent theme" since the decree has been Read's parenting improving only when litigation or court hearings were imminent. So we conclude placing the children in Brandis's physical care and awarding Read visitation serves the children's best interests.

Turning to Read's challenge to the amount of visitation, the district court's modified order increases stability by "reducing the number of potential friction points between the parents . . . and reducing stress on the child[ren]." *Wood*, 2016 WL 4384407, at *2. The prior decree often shuttled the children back and forth without any established pick-up times or transportation obligations, which led to

conflict. The modified order, conversely, extends the children's stays with Brandis and provides specific pick-up times and transportation obligations.

Read's visitation includes Wednesday nights and every other Friday through Sunday. *See In re Marriage of Ertmann*, 376 N.W.2d 918, 922 (Iowa Ct. App. 1985) ("Visitation should include not only weekend time, but time during the week when not disruptive to allow the noncustodial parent the chance to become involved in the child's day-to-day activity as well as weekend fun."). Given Read's testimony at trial that the children were "confused" by constant transportation and would benefit from more extended stays with a parent, we find this visitation appropriate. Again, we are guided by the children's interests, which are best served by more consistent stays with Brandis. *See Hanson*, 733 N.W.2d at 695.

We emphasize that the district court's order did not modify the original decree's provision that the parties may adjust this schedule by mutual agreement. And we commend Brandis's past efforts to offer Read the chance to care for the children during her assigned parenting time when the need arose. If Read still desires additional time with the children, he may choose to respond more favorably to those offers in the future. The affirmance of this modification order does not change the continued need for both parents to cooperate to support each of their relationships with the children and serve the children's best interests.

### III. Appellate Attorney Fees

Finally, Brandis requests appellate attorney fees. We have discretion whether to award appellate attorney fees "to the prevailing party" in a modification proceeding. Iowa Code § 598.36; *see also In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). To guide our discretion, we consider "the parties' respective

abilities to pay," the extent that the party prevailed, and whether the party had to defend the trial court's decision on appeal. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). Because Brandis is the prevailing party, had to defend the trial court's decision, and has significantly less ability to pay than Read, we award Brandis $3000 in appellate attorney fees.

**AFFIRMED.**